FILED
2016 Aug-19  AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ERIC JACKSON, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NUMBER: |
| v | ) | |
| | ) | |
| THE CITY OF BIRMINGHAM, | ) | |
| | ) | PLAINTIFF DEMANDS A |
| DEFENDANT. | ) | TRIAL BY STRUCK JURY. |

## COMPLAINT

## JURISDICTION AND VENUE

1.  This is a suit for relief for discrimination based on military service brought
    pursuant to the Uniformed Services Employment and Re-employment
    Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.* The Plaintiff
    also seeks to recover damages for violation of the Americans with
    Disabilities Act, as amended ("ADA") and Title VII of the Civil Rights Act
    of 1964, as amended.

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331.

3.  Venue is proper under 28 U.S.C. § 1391, as the Plaintiff would have been employed by the Defendant in Jefferson County, Alabama.

## PARTIES

4.  The Plaintiff, Eric Jackson, was more than 19 years old at the time of the events in question, and is currently a resident of Jefferson County, Alabama.

5.  Defendant City of Birmingham is located in Jefferson County, Alabama.

6.  The City of Birmingham is an employer for purposes of USERRA.

7.  The City of Birmingham  is an employer for purposes of the ADA.

8.  The City of Birmigham is an employer for purposes of Title VII.

## ADMINISTRATIVE REMEDIES

9.  The City of Birmingham issued a Decision Upon Determination Hearing on August 9, 2014 terminating Mr. Jackson's employment effective August 11, 2014.

10. On November 12, 2014, Mr. Jackson filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). A copy of that charge (420-2015-00380) is attached as Exhibit 1.

11. Mr. Jackson filed his Charge of Discrimination within 180 days of August 9, 2014.

12. On June 9,2016, the U.S. Department of justice, Civil Rights Division, issued to Mr. Jackson his Notice of Right to Sue. A copy is attached as Exhibit 2.

13. Mr. Jackson  filed this action within 90 days of June 9, 2016.

14. All administrative prerequisites to bringing this action have been met.

15. Mr. Jackson  has exhausted his administrative remedies

## FACTUAL ALLEGATIONS

16. The City of Birmingham hired Mr. Jackson on January 17, 2012.

17. Section 2.13 of the City of Birmingham Supplemental Personnel Policies and Procedures (September 2011) provides that "[c]lassified employees shall serve a probationary period of twelve months."

18. The City of Birmingham hired Mr. Jackson to work as a Parking Enforcement Officer.

19. The City of Birmingham scheduled Mr. Jackson approximately 40 hours a week.

20.   The City of Birmingham paid Mr. Jackson $12 an hour.

21.   Mr. Jackson was a member of the National Guard.

22.   On or around February 13, 2013, Mr. Jackson was deployed to Afghanistan.

23.   He notified the City of Birmingham that he would be deployed.

24.   When Mr. Jackson returned from Afghanistan, Mr. Jackson had a number of physical injuries with his knees and fingers.

25.   When Mr. Jackson returned from Afghanistan, Mr. Jackson was exhibiting signs of Post-Traumatic Stress Disorder ("PTSD").

26.   Effective January 17, 2013, Mr. Jackson had been employed by the City of Birmingham for twelve months.

27.   Effective January 17, 2013, Mr. Jackson's probationary period ended.

28.   Mr. Jackson went through the Wounded Warrior Program in Augusta, Georgia following his return from Afghanistan.

29.   Throughout his deployment and treatment with the Wound Warrior Program, Mr. Jackson remained in contact with Diana Bates of the City of Birmingham, providing her updates on his progress and sending her copies of his orders whenever there were changes.

30.   While in the Wounded Warrior Program, Mr. Jackson was diagnosed with

PTSD and received a disability rating of 80 percent (70% for PTSD and 10% for his physical disabilities).

31. As the result of his PTSD, Mr. Jackson is limited in the major life activity of sleeping and he experiences periods of anxiety and stress.

32. On February 26, 2014, Mr. Jackson was honorably discharged from the National Guard due to his disabilities.

33. On or around May 27, 2014, Mr. Jackson returned to his job with the City of Birmingham.

34. Mr. Jackson made the City of Birmingham aware of his disability rating.

35. Mr. Jackson made the City of Birmingham aware that as the result of his PTSD, he experienced sleeping problems, and that the effects of the PTSD and the medication he was taking often caused him to oversleep. He also made the City of Birmingham aware that he may have to report off from work at times due to his PTSD and treatment plan.

36. When Mr. Jackson returned to work, he was required to appear for work at 8:00 a.m.

37. Mr. Jackson's work did not start until 8:30 - 9:00 a.m. when he would get his handheld device, get a test ticket and prepare his buggy for the day.

38.   Mr. Jackson would take lunch from 12:30 to 1:30.

39.   Mr. Jackson would work on the road until 4:00 p.m.

40.   After completing his road work, Mr. Jackson would turn in his handheld
      and fill out paperwork until 5:00 p.m.

41.   From May 2014, through July 8, 2014, Mr. Jackson had no reprimands for
      attendance.

42.   Because of the difficulty he was having with his sleep schedule as the result
      of his PTSD, Mr. Jackson requested a schedule accommodation with a later
      start time.

43.   He did not receive the accommodation.

44.   Mr. Jackson was the only male  Parking Enforcement Officer.  He worked
      with six (6) female  Parking Enforcement Officers.

45.   The women received accommodations for their schedule needs.

46.   Mr. Jackson had no knowledge of the women having a disability.

47.   Each of the women with whom Mr. Jackson worked were late multiple
      times a week.

48.   Based on Mr. Jackson's observations, none of the women were written up
      for being late.

49.  Around this time, the City of Birmingham changed its position and informed Mr. Jackson it considered him to be a probationary employee.

50.  During this time, Mr. William Goodman, Chief of Traffic Operations, told him not to worry about attendance; he would take care of it.

51.  Mr. Jackson's first-line supervisor, Jose Martinez, began to talk negatively about Mr. Jackson behind his back.

52.  Starting July 9, 2014, Mr. Martinez began issuing written discipline to Mr. Jackson for attendance issues.

53.  The women with whom Mr. Jackson worked expressed their surprise at him receiving discipline since they had not been disciplined for their being late or other attendance issues.

54.  After receiving his two reprimands, Mr. Jackson returned to the Veterans Affairs Medical Center ("VA") and notified his doctor, Dr. Barbara Turner, of the disciplinary actions taken against him.

55.  On July14, 2014, Dr. Turner wrote a letter on VA letterhead she was treating Mr. Jackson for PTSD, some of things that occurred on a day-to-day basis at Mr. Jackson's job worsened his PTSD symptoms, Mr. Jackson's treatment plan was medication management along with seeing a counselor,

and that he feared telling his employer about his condition because he feared he would experience retaliation in an attempt to get rid of him.

56. Mr. Jackson gave Dr. Turner's letter to the City of Birmingham.

57. Mr. Jackson requested an accommodation relating to the time he would report to work due to the effects his disability had on his sleep.

58. After Mr. Jackson gave the City of Birmingham Dr. Turner's letter, the City of Birmingham removed Mr. Jackson from the road and required him to sit in an office where he was not able to perform his official tasks as a parking enforcement officer.  He was directed to read city ordinances.

59. After Mr. Jackson gave his letter to the City of Birmingham, he received several more disciplinary actions for alleged attendance issues.

60. On July 27, 2014, the City of Birmingham required Mr. Jackson to undergo a psychological evaluation at the University of Alabama at Birmingham.

61. Mr. Jackson was told it would take about three (3) weeks for the results of his psychological evaluation to come back.

62. On or about August 5, the City of Birmingham notified Mr. Jackson he had a termination hearing scheduled for 1:30 p.m. August 6.

63. The date at the top of the Notice of Determination Hearing showing when it

was prepared was July 29, 2014.

64.     The City of Birmingham informed Mr. Jackson he was being terminated for "violation of the Jefferson County Personnel Board Rules and Regulations Rule 12, Paragraph 12.2, Sections (c) 'Conduct unbecoming an employee in the public service,' (l) 'Violation of any rule or regulation of the Appointing Authority, or failure to comply with instructions made and given by a superior officer or supervisor,' (m) Violation of any of these provisions of the Act of the Rules,' (p) 'Any other legitimate and nondiscriminatory reason that constitutes good cause for disciplinary action, is reasonably specific, is consistent with the Act and these Rules and is not motivated by any non-work-related preference or animus for or against any person.'"

65.     The Notice of Determination Hearing made no reference to the AWOL and Late Policy contained in the City of Birmingham Agreement with LIU.

66.     Due to the short notice, Mr. Jackson was unable to secure representation for the termination hearing.

67.     The union informed Mr. Jackson they could not provide representation for him since the City considered him to be a probationary employee.

68.     During the hearing, Mr. Goodman told Mr. Jackson that while the City of

Birmingham had not received the results of Mr. Jackson's psychological evaluation, he was still being terminated anyway because he knew the difference between "what's real and what's fake."

69. On August 9, 2014, the City of Birmingham issued a Decision Upon Determination Hearing signed by Gregory Dawkins, P.E. City Traffic Engineer.

70. The Decision Upon Determination Hearing terminated Mr. Jackson's employment.

71. The Decision Upon Determination Hearing notified Mr. Jackson he could request a review of the decision to the Appointing Authority.

72. Deputy Director, Human Resources, Debra Hawes Crook reviewed the termination decision.

73. In Deputy Director Debra Hawes Crook's October 17 Review of Employment Termination, she noted Mr. Jackson was terminated for violations of the Jefferson County Personnel Board Rules and Regulations Rule 12, Paragraph 12.2.

74. Deputy Director Debra Hawes Crook's October 17 Review of Employment Termination made no reference to any violations the AWOL and Late Policy

contained in the LIU Agreement with the City of Birmingham.

75.    When Deputy Director, Human Resources, Debra Hawes Crook wrote her

report of her review, in recommending sustaining the termination, she wrote

that Mr. Jackson worked as a Disc Jockey (DJ) under the name "visionary

Alter Ego" and wrote "[i]t seems contradictory that Mr. Jackson has stated

that certain factors he faced while working as a Parking Enforcement

Officer worsen his PTSD, including being subjected the sound of horns

blowing and people yelling, in other words loud noises and people,

something that occurs in the clubs he works in the during his DJ job.  It is

recommended that the termination should be sustained."

76.    While Mr. Jackson did perform music prior to his deployment in

Afghanistan, he did not work as a DJ or performer following his return from

active duty.

77.    Upon information and belief, a female employee without a disability or

military service obligations replaced Mr. Jackson.

78.    Mr. Jackson filed his Charge of Discrimination with the U.S. Equal

Employment Opportunity Commission ("EEOC") on November 12, 2014.

79.    In his two-page EEOC Charge, Mr. Jackson alleged the City discriminated

against him based on his gender and his disability and retaliated against him.

80. On November 18, 2014, the U.S. Equal Employment Opportunity Commission sent to the City of Birmingham a Notice of Charge of Discrimination in which it asked the City to submit by December 18, 2014, "a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below."

81. On January 20, 2015, Assistant City Attorney Ted Smith submitted a position statement on behalf of the City to the EEOC. The three paragraph position statement read as follows:

The City of Birmingham denies discriminating against Mr. Jackson generally and specifically under Title VII of the Civil Rights Act ("Title VII") and The Americans with Disabilities Act ("ADA").

Mr. Jackson was hired as a Parking Enforcement Officer on January 17, 2012. Under Section 2.13 of the City of Birmingham's Supplement Personnel Policies, Mr. Jackson was a classified employee with a probationary period of twelve months (Exhibit 1). Mr. Jackson's position was covered by the Labors International Union ("LIU") negotiated agreement (Exhibit 2). Mr. Jackson violated the AWOL and Late Policy contained on page 2 of the LIU Agreement. I have also enclosed Mr. Jackson's disciplinary hearing with the City of Birmingham to demonstrate his unwillingness to full fill his duties and the City's effort to be progressive with him (Exhibit

3).  Please take notice of the days Mr. Jackson went AWOL.  Mr. Jackson requested a review of his termination dated August 11, 2014. This review was done by Debra Hawes Crook, Deputy Director of Human Resources.  Upon her review, she deiced to uphold Mr. Jackson termination.

In closing, the City denies allowing females to violate the leave policy as alleged.  The City hopes that after a review of the enclosed documents and its effort to maintain Mr. Jackson as an employee, specifically with progressive discipline that you reject his claim. Should you have any additional questions or concerns, please do not hesitate to contact me.  Thank you.

A copy of the position statement is attached as Exhibit 4.

82.   Even though the decision on the Determination Hearing and Debra Hawes Crook's review of the termination alleged Mr. Jackson was terminated for violating  Jefferson County Personnel Board Rules and Regulations Rule 12, Paragraph 12.2, the City of Birmingham's position statement submitted to the EEOC made no reference to  Jefferson County Personnel Board Rules and Regulations Rule 12, Paragraph 12.2, nor did it include a copy of the policy.

## COUNT I

## USERRA

83. Plaintiff adopts and incorporates by reference paragraphs 1-82.

84. Plaintiff was a member of and had an obligation to perform service in the uniformed service: The National Guard.

85. Plaintiff was protected by USERRA from discrimination on that basis.

86. Defendant violated Plaintiff's rights under USERRA by classifying him as a probationary employee, subjecting him discipline, including termination, because of his service in a uniformed service.

87. Defendant's violations of USERRA were willful.

88. Defendant's conduct injured the Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the following:

 (a) The Court enter an Order declaring the Defendant's acts as unlawful under USERRA;

 (b) The Court grant Plaintiff a permanent injunction enjoining Defendant from further violating USERRA;

 (c) An award of backpay;

(d)     An award of compensatory damage to be determined by the trier of fact;

(e)     The Court enter an order making Plaintiff whole by hiring him and placing him in the position he would have occupied in the absence of discrimination, or alternatively, providing front-pay; providing back-pay and benefits with interest; and ordering Defendant to pay compensatory and liquidated damages;

(f)     That the Court award such other legal and equitable relief as justice requires, including but not limited to, an award of costs, attorney's fees, expert witness fees and expenses.


## COUNT II

## AMERICANS WITH DISABILITIES ACT

89.     Plaintiff adopts and incorporates by reference paragraphs 1-88.

90.     The ADA states that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms and conditions of employment.  42 U.S. C. § 12112(a). "Discriminate against a qualified individual on the basis of disability"

includes the failure to make reasonable accommodations to the know

physical or mental limitations of an otherwise qualified individual with a

disability, where there is no undue hardship.  42 U.S.C. § 12112(b)(5)(a); 29

CFR 1630.9.

91.  At all relevant times herein, the Defendant was aware that the Plaintiff was

a qualified individual with a disability and that Plaintiff requested the

following reasonable accommodations of that disability: modification of ihs

work schedule.

92.  Defendant denied the request for accommodation.

93.  Defendant refused to engage in the interactive process and/or prematurely

discontinued the interactive process of determining the feasibility of

reasonable accommodations.

94.  Defendant removed Plaintiff from his job duties, disciplined him and

terminated him because of his disability.

95.  As the proximate result of the acts and omissions of the Defendant, Plaintiff

suffered damages include loss of earnings, benefits, interest, costs and other

pecuniary loss.  He also suffered emotional and mental distress, anguish,

humiliation, embarrassment, discomfort and anxiety.

96.    Plaintiff seeks relief in order to be made whole.

WHEREFORE, PREMISES CONSIDERED, Mr. Hance requests entry of a

judgment against Defendant awarding:

(a)    backpay to be determined by the trier of fact;

(b)    compensatory damages  to be determined by the trier of fact;

(c)    injunctive relief including backpay, reinstatement and/or reasonable

frontpay;

(d)    pre-judgment interest; and

(e)    costs, including a reasonable attorney's fee.


COUNT III

TITLE VII
(Gender Discrimination - Disparate Treatment)

97.    Plaintiff adopts and incorporates by reference paragraphs 1-96.

98.    Defendant violated the provision of Title VII of the Civil Rights Act of

1964, as amended, that prohibits gender discrimination.

99.    Defendant treated female employees more favorably than the Plaintiff with

respect to schedule modifications, accommodations, and discipline

(including termination) for attendance.

100. As the result of the Defendant's gender-based disparate treatment, Mr. Jackson was injured.

WHEREFORE, PREMISES CONSIDERED, Mr. Hance requests entry of a judgment against Defendant awarding:

(a)   backpay to be determined by the trier of fact;

(b)   compensatory damages to be determined by the trier of fact;

(c)   injunctive relief including reinstatement, hiring and/or reasonable frontpay;

(d)   pre-judgment interest; and

(e)   costs, including a reasonable attorney's fee.

## COUNT IV

## ADA - RETALIATION

101. Plaintiff adopts and incorporates by reference paragraphs 1-100.

102. Plaintiff engaged in activity protected by the ADA when he requested an accommodation for his disability and submitted the letter from his doctor expressing his concern that he was being treated adversely due to his disability.

103. Because of Mr. Jackson's protected activity, the Defendant removed Mr. Jackson from his job duties and placed in him an office to review regulations, subjected him to discipline and terminated his employment.

104. As the result of the Defendant's retaliation, Mr. Jackson was injured.

WHEREFORE, PREMISES CONSIDERED, Mr. Hance requests entry of a judgment against Defendant awarding:

(a)   backpay to be determined by the trier of fact;

(b)   compensatory damages  to be determined by the trier of fact;

(c)   injunctive relief including reinstatement, hiring and/or reasonable frontpay;

(d)   pre-judgment interest; and

(e)   costs, including a reasonable attorney's fee.

Respectfully submitted,

*Heather Newsom Leonard*

Heather Newsom Leonard
ASB-1152-O61H
ATTORNEY FOR PLAINTIFF
HEATHER LEONARD, P.C.
P.O. Box 43768
Birmingham, AL 35243
(205) 977-5421 - voice
(205) 278-1400 - facsimile
Heather@HeatherLeonardPC.com

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:**

The City of Birmingham
c/o Mayor William A. Bell
City Hall  Third Floor
710 20th Street North
Birmingham, Al 35203

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ERIC JACKSON,                          )
                                       )
        PLAINTIFF,                     )
                                       )
v                                      )
                                       )
THE CITY OF BIRMINGHAM,                )
                                       )
        DEFENDANT.                     )


## COMPLAINT
Exhibit 1 - EEOC Charge

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

AGENCY

☐ FEPA
☒ EEOC

**CHARGE NUMBER**

420-2015-00380

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Eric Jackson | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| City of Birmingham Traffic Dept | more than 15 | (205) 254-2450 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 710 North 20th St.; 9th Floor | Birmingham, AL 35203 | Jefferson |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE
☒ RETALIATION  ☐ NATIONAL ORIGIN  ☒ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)     LATEST (ALL)

8/12/2014

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a qualified individual with a disability for purposes of the Americans with Disabilities Act, as amended. I worked for the Respondent s a Parking Enforcement Officer from February 12, 2012 through August 12, 2014. It was known to the Respondent that I served in the military, and suffered injuries during my service that resulted in me having an 80% disability rating.

I initiated discussions with my supervisor about my disability and requested an accommodation involving flexibility with my arrival time at work/ a schedule modification. I was initially led to believe that my request could be accommodated. My female coworkers (who I do not believe to suffer from any disabilities) were allowed flexibility with their schedules, including arriving to work significantly later than their scheduled start time. While the non-disabled female employees who frequently arrived to work after the scheduled time for the start of their shift were not reprimanded or disciplined for their attendance, starting July 8, 2014, I was. The discipline evidenced the Respondent was no longer accommodating my disability.

On July 16, 2014, I gave the Respondent a letter from the Veterans Administration explaining my disability and expressing that I feared retaliation by the Respondent for having revealed my condition. After I presented that letter to the Respondent, I was removed from my road duties and directed to sit in the office and read city ordinances during the duration of my shift. This was a decrease in responsibilities and prestige. I believe it was an effort to force me to quit. It was humiliating.

(Continued on page 2 of 2)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 11/11/14 — Date    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

RECEIVED

NOV 1 2 2014

E.E.O.C.
BIRMINGHAM DISTRICT

EEOC FORM 5 (10/94)

| CHARGE OF DISCRIMINATION | AGENCY | | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | | 420-2015 00380 |

**THE PARTICULARS ARE** *(If additional paper is needed, attach extra sheet(s)):*

(Continued from page 1 of 2)

The Respondent scheduled me for a psychological evaluation at UAB on July 27, 2014.  I attended the scheduled appointment. After the evaluation, the Respondent informed me I was being terminated and scheduled me for a termination hearing.  At the hearing, I was informed the Respondent had not received the results of my psychological exam, but that results did not matter because they knew what was real and what was fake.

It did not appear that the Respondent engaged in the interactive dialogue about accommodating my disability that is anticipated by the ADA.

I believe I have been discriminated against in violation of the Americans with Disabilities Act, as amended.  I believe I have been discriminated against based on my gender, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.  I believe I have been retaliated against in violation of both the ADA and Title VII.

**RECEIVED**

**NOV 1 2 2014**

E.E.O.C.
**BIRMINGHAM DISTRICT**

| | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 11/11/14<br>Date               Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month and year) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ERIC JACKSON,                         )
                                      )
        PLAINTIFF,                    )
                                      )
v                                     )
                                      )
THE CITY OF BIRMINGHAM,               )
                                      )
        DEFENDANT.                    )

## COMPLAINT
Exhibit 2 - Notice of Right to Sue



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

**CERTIFIED MAIL**
7010 0290 0000 2017 4245

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

June 09, 2016

Mr. Eric Jackson
c/o Heather Leonard, Esquire
Law Office of Heather Leonard
P.O. Box 43768
Birmingham, AL  35243

Re: EEOC Charge Against City of Birmingham Traffic Dept.
    No. 420201500380

Dear Mr. Jackson:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under: Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and,  Title V, Section 503 of the Act, 42 U.S.C. 12203.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Birmingham District Office, Birmingham, AL.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                    Sincerely,

                    Vanita Gupta
              Principal Deputy Assistant Attorney General
                    Civil Rights Division

              by    *Karen L. Ferguson*
                    Karen L. Ferguson
              Supervisory Civil Rights Analyst
              Employment Litigation Section

cc: Birmingham District Office, EEOC
    City of Birmingham Traffic Dept.