FILED
2017 Aug-28  PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERIC JACKSON,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION** |
| | ) | |
| **THE CITY OF BIRMINGHAM,** | ) | **No. 2:16-CV-01349-MHH** |
| | ) | |
| **DEFENDANT.** | ) | |

## DEFENDANT CITY OF BIRMINGHAM'S BRIEF
## IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant City of Birmingham ("COB" or "Defendant") submits the following brief in support of its Motion for Partial Summary Judgment:

## I. INTRODUCTION

During the August 1, 2017 Status Conference, the Court asked the parties to brief two issues: (1) whether Plaintiff Eric Jackson ("Jackson" or "Plaintiff") is a qualified individual under the ADA and (2) whether requiring Jackson to complete a training probationary period upon his return from two years of military leave violated USERRA.[1]  COB requests that this Court grant it partial summary judgment on these two issues.  Jackson is not a qualified individual under the ADA because he cannot show that he can perform the essential functions of a Parking Enforcement Officer with or without reasonable accommodation.   Additionally,

---

[1] COB reserves the right to move for summary judgment on Plaintiff's remaining claims.

requiring Jackson to complete a training probationary period did not violate USERRA because it was a bona fide period of training and evaluation.

## II. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

### A.    Jackson's Employment with COB.

1.    Jackson was hired by COB on January 17, 2012 as a Parking Enforcement Officer ("PEO"). (Doc. 20:1 at 69:8-70:20, 87:14-19& DX 11).

2.    During his employment with COB, Jackson's direct supervisor was PEO Supervisor Jose Martinez; Martinez reported to Chief of Traffic Operations Will Goodman; Goodman reported to Traffic Engineer Greg Dawkins. (Doc. 20:1 at 69:11-16; Doc. 21:1 at 16:4-7,17:1-16; Doc. 22:1 at 25:2-4, 26:21-27:9; Doc. 23:1 at 19:16-19, 33:8-16 & PX 1).

3.    Martinez, Goodman, and Dawkins are all military veterans.  (Doc. 20:1 at 69:17-70:5, 234:20-23; Doc. 21:1 at 55:23-56:10; Doc. 22:1 at 18:12-15; Doc. 23:1 at 17:12-18:9).

a.    Martinez served in combat zones and has a disability rating from the Army for anxiety and sleep issues, for which he has taken the same medication as Jackson.  (Doc. 21:1 at 59:2-60:11).

b.    Dawkins also has a disability rating from the Army, and, like Jackson, has been diagnosed with PTSD related to his military service. (Doc. 23:1 at 166:11-15, 167:8-18).

4.     Jackson only worked in the PEO position for fifteen (15) days before he was deployed for military service on February 13, 2012.  (Doc. 20:1 at 87:14-88:6, 94:13-19 & Doc. 20:12-13, DX 11-12).

5.     Jackson did not return to work from his military service for over two years until May 27 2014.[2]  (Doc. 20:1 at 106:2-14 & DX 20-21, 23).

6.     After an August 8, 2014 Determination Hearing, Dawkins terminated Jackson on August 11, 2014 for violating the attendance policy.  (Doc. 20:1 at 150:5-151:5 & DX 33, 36; Doc. 21:1 at 28:13-29:3; Doc. 22:1 at 91:17-92:18; Doc. 23:1 at 24:7-9, 33:3-7, 37:19-38:5, 59:9-14, 66:1-5, 157:3-7).

### B.     **COB's Probationary Employee Policy.**

7.     Section 2.13 of COB's Supplemental Personnel Policies and Procedures describes the "Probationary Period for Employees":

> ***Classified employees shall serve a probationary period of twelve months***. . . . Classified employees accrue sick leave or vacation leave during their probationary period however they may not use sick leave or vacation leave during their probationary period.

(Doc. 20:1 at 76:8-77:1 & DX 8) (emphasis added).[3]

8.     PEOs initially spend several weeks training directly with a supervisor. (Doc. 21:1 at 50:12-15; 52:5-21; Doc. 23:24 at 16:21-17:20).

---

[2]   Jackson failed to show for work on May 27, 2014 and was called in by Martinez.  (Doc. 20:1 at 106:19-107:6 & DX 23; Doc. 21:1. at 114:23-116:16, 128:18-130:3, 133:13-18 & PX 44).

[3]   This policy is required by the Jefferson County Personnel Board Rules and Regulations, which require that all subject jurisdictions implement a satisfactory probationary period for each employment position.  See Doc. 20:11 DX 10 at § 11.6.

9. The training includes studying and learning: ordinances; parking zones; how to identify violations; how to issue citations; and how to operate equipment. (Doc. 20:1 at 75:15-78:4; Doc. 21:1 at 49:13-51:18; 54:3-20).

10. During this time period, the PEO is accompanied at all times by the supervisor when patrolling his assigned zone. (Doc. 21:1 at 52:13-53:1, 71:6-17, 221:21-222:3; Doc. 23:24 at 17:9-16).

11. This initial training period lasts several weeks, depending on the PEO's progress. (Doc. 21:1 at 42:8-11, 52:15-53:1; Doc. 23:24 at 30:1-4).

12. After the initial period of training, the PEO is released to work in his assigned zone but is still regularly monitored by a supervisor. (Doc. 21:1 at 38:8-15, 42:8-43:22, 52:13-53:1, 69:23-70:9; Doc. 23:24 at 30:23-31:6, 40:7-42:1).

13. This monitoring includes the supervisor occasionally accompanying the PEO on patrol and the supervisor reviewing citations issued by the PEO. (Doc. 21:1 at 52:15-21, 71:6-17; Doc. 23:24 at 30:23-31:6, 40:7-21, 41:20-42:1).

14. A PEO's performance is routinely monitored and evaluated throughout the probationary period because PEOs continue to be exposed to new situations and violations months into their training, and the PEO supervisor must be able to evaluate how each PEO performs in these situations. (Doc. 20:1 at 75:15-76:1; Doc. 21:1 at 52:15-53:1; Doc. 22:1 at 67:19-68:3; Doc. 23:24 at 30:1-4, 40:18-21).

15. Because Jackson worked only 15 days before his deployment, he was

unable to complete the necessary training all PEOs are required to undergo during their probationary period.  (Doc. 21:1 at 52:5-21, 70:10-23; Doc. 23:24 at 18:2-11).

16.     Jackson did not complete the initial training period and had not been released to work in a parking zone on his own before his deployment. (Doc. 21:1 at 41:22-42:11, 70:10-17; Doc. 23:24 at 18:2-11).

17.     When Jackson returned to work over two years later in 2014, he continued to make mistakes when issuing citations, and for this reason, the PEO supervisor continued to monitor and evaluate Jackson's performance in June and July 2014. (Doc. 21:1 at 38:2-15, 41:22-43:20; Doc. 23:24 at 30:23-31:6, 40:7-15).

### C.     <u>Jackson's Ability to Perform the Essential Functions of a PEO.</u>

18.     The essential functions of a PEO include, but are not limited to: (1) issuing parking citations; (2) patrolling a zone by foot and vehicle; (3) communicating and interacting with the public; (4) informing violators of parking laws; (5) providing information to the public regarding directions and parking facilities; and (6) asking drivers to move vehicles to designated areas. (Doc. 20:1 at 70:13-72:23 & DX 5; Doc. 21:1 at 33:18-34:7, 49:13-51:13; Doc. 22:1 at 46:10-18 & PX 2; Doc. 23:1. at 45:18-46:14, 49:13-50:10, 50:18-52:1, 126:22-127:13).

19.     Reliable and consistent attendance is an essential function of a PEO.

a.     The PEO work schedule is Monday through Friday, 8:00 a.m. to 5:00 p.m., and is based on the time most businesses are open.  (Doc. 20:1 at

90:5-9; Doc. 21:1 at 55:9-13; Doc. 22:1 at 68:10-22; Doc. 23:1 at 47:8-10).

     b.    Each parking zone is monitored by one PEO. (Doc. 20:1 at 78:5-16; Doc. 21:1 at 22:12-23:20; Doc. 22:1 at 70:6-9; Doc. 23:1 at 46:23-47:7).

     c.    If a zone is unmonitored, violations go uncited, causing COB to lose revenue and increasing the likelihood parking and traffic issues arise in that zone. (Doc. 20:1 at 78:5-16; Doc. 21:1 at 22:12-23:20; Doc. 23:1 at 46:23-47:7).

     d.    Jackson does not dispute that between May 27, 2014 and August 6, 2014, he was absent 8 times, arrived late to work 11 times, and left work early 7 times.  (Doc. 20:1 at 106:5-17, 115:5-132:17, 145:23-146:4 & DX 23; Doc. 20:27 & DX 26).

     e.    Out of the 50 days Jackson was scheduled to work in 2014, **he failed to work a full shift on 26 (more than half) of those days**. Id.

     f.    On many of these occasions, Jackson's supervisor received little to no advance notice of his absence. (Doc. 20:1 at 135:17-142:12 & DX 31, 32; Doc. 21:1 at 208:4-10, 212:18-21, 220:13-20; Doc. 22:1 at 63:20-64:5, 142:16-21).

20.    Jackson admits that PEOs are exposed to the following on a daily basis: (1) members of the public who are angry and confrontational; (2) traffic; (3) loud noises; and (4) flashing lights. (Doc. 20:1 at 175:5-19, 184:9-19, 200:4-6, 203:1-7, 207:14-208:5, 209:1-9, 210:22-211:3, 213:10-20 & DX 38 & DX 54, p. 300 & DX 56, p. 261; Doc. 23:1 at 49:13-19, 50:18-52:1, 126:22-127:13).

21.     There is no way to perform the duties of a PEO without being exposed to these conditions. (Doc. 20:1 at 211:4-10 & DX 5; Doc. 21:1 at 50:2-5).

22.     Following his discharge from the military, Jackson received a seventy-percent disability rating and was diagnosed with post-traumatic stress disorder (PTSD).  (Doc. 20:1 at 180:7-181:11 & DX 40, p. 147).

23.     According to a July 14, 2014 letter from Jackson's medical provider, Dr. Barbara Turner, which Jackson provided to COB, Jackson's PTSD symptoms are worsened by "people getting in his face," "people yelling," and "the sounds of horns blowing;" Dr. Turner's letter also stated that the medication Jackson took to treat his PTSD caused him to oversleep.  (Doc. 20:1 at 155:22-157:1 & DX 38).

24.     According to Jackson, many aspects of the PEO position worsened Jackson's PTSD symptoms.   (Doc. 20:1 at 184:9-19, 200:4-6, 203:1-7, 207:14-208:5, 209:1-9, 210:22-211:3, 213:10-20 & DX 54, p. 300 & DX 56, p. 261).

        a.     Jackson testified he is "easily startled and agitated with loud noise" and "becom[es] extremely agitated if people confront [him] when [he] is ticketing their car." (Doc. 20:1 at 175:5-19 & DX 38).

        b.     Jackson testified that patrolling his zone caused anxiety and flashbacks **every day** he worked as a PEO. (Doc. 20:1 at 158:19-159:22, 189:15-190:11, 191:12-192:2, 192:14-21, 195:9-17, 187:20-188:7 & DX 44).

25.     Jackson claims he requested the following accommodations from

COB: (1) allowing him to arrive at work late, at unspecified times and on unspecified days; (2) allowing him to leave work early, at unspecified times and on unspecified days; (3) allowing him additional and longer breaks; and (4) allowing him time off for his doctor's appointments.  (Doc. 20:1. at 160:4-161:6).

26.    Jackson did not provide COB with documentation from any medical provider stating that he needed a flexible work schedule because of his PTSD. (Doc. 20:1 at 165:17-166:5, 176:1-23 & DX 39).

27.    Regarding his requested schedule accommodation, Jackson testified: "I couldn't pin down the time where I knew I could be in the office," and "all I could say is leeway.  It's kind of an open – it's nothing that can be predicted." (Doc. 20:1 at 163:3-4, 167:7-9).

28.    Jackson admits (1) he was already allowed multiple breaks, (2) no one limited the number of restroom breaks he was allowed to take, and (3) he was allowed time off to attend his doctor's appointments.  (Doc. 20:1 at 154:10-13, 162:7-17, 163:5-16; Doc. 21:1 at 47:2-18; Doc. 23:1 at 137:2-8, 142:6-14).

29.    Jackson also admits that the "leeway" he requested to come to work late and leave early would **not alleviate or eliminate** any of the many aspects of the PEO position that trigger his PTSD symptoms.  (Doc. 20:1 at 165:19-168:5).

30.    Jackson admits he still experiences PTSD symptoms to this day, some of which are now worse. (Doc. 20:1 at 184:9-19, 200:4-6, 203:1-7, 207:14-208:5,

209:1-9, 210:22-211:3, 213:10-20 & DX 54, p. 300 & DX 56, p. 261).

31.     Jackson admits he currently receives SSDI benefits for his PTSD, and that he has sought "unemployable status" related to his disability rating from the military.  (Doc. 20:1 at 201:9-18 & DX 52).

## III.  ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment is appropriate to resolve cases in which, under the substantive evidentiary standards, no substantial evidence establishes a material, outcome-determinative fact issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Material" means "outcome determinative," and only substantial admissible evidence suffices.  Id. at 252; Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999).  Neither general allegations which do not reveal precise facts, nor colorable evidence or conclusory statements create a genuine issue of material fact.  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995); Brown v. City of Clewiston, 848 F.2d 1534, 1537 (11th Cir. 1988). When the "substantive evidentiary standards" give the nonmovant the burden of proof on the merits, the movant prevails either by offering evidence or by pointing out gaps in the nonmovant's evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Summary judgment standards "apply in job discrimination cases as in other cases" and "no thumb is to be placed on either side of the scale."  Chapman v. AI

Transp., 229 F. 3d 1012, 1026 (11th Cir. 2000).   Summary judgment for the defendant in discrimination cases is not unusual and is appropriate even though such cases may be fact-intensive and involve questions of intent. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080-81 (11th Cir. 1990); Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999).

### B.   Jackson is Not a Qualified Individual Under the ADA.

To establish a prima facie case of discrimination under the ADA, Jackson must show: (1) he is disabled; (2) he is a qualified individual; and (3) defendant unlawfully discriminated against him because of his disability. Jarvela v. Crete Carrier Corp., 776 F.3d 822, 828 (11th Cir. 2015); Shepard v. UPS, 470 Fed. Appx. 726, 729 (11th Cir. 2012).  A "qualified individual" is one who can "with or without reasonable accommodation . . . perform the essential functions of the . . . position that [he] holds or desires." 42 U.S.C. § 12111(8); see also, Jarvela, 776 F.3d at 828; Shepard, 470 Fed. Appx. at 729-30.  Accordingly, Jackson "must show either that he can perform the essential functions of his job without accommodation, or ... that he can perform the essential functions of his job with a reasonable accommodation." Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000); Shepard, 470 Fed. Appx. at 729-30. "Thus, if [Jackson] is unable to perform an essential function of his . . . job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered by the ADA." Id.

Jackson's ADA claim fails as a matter of law because he cannot establish he is a qualified individual under the ADA. Specifically, Jackson cannot show he can perform the essential functions of the PEO position without a reasonable accommodation, and he did not identify or request a reasonable accommodation that would enable him to perform the essential functions of a PEO.

### 1. The Essential Functions of a PEO.

A job duty is an "essential function" if it is one of "the fundamental job duties of a position that an individual with a disability is actually required to perform." Earl, 207 F.3d at 1365 (citing 29 C.F.R. § 1630.2(n)(2)(i)); Everett v. Grady Mem. Hosp. Corp., 2017 U.S. App. LEXS 15264, at *9 (11th Cir. 2017). The ADA requires that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written job description . . . this job description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Thus, "[t]he employer's judgment as to which functions are essential" is substantial "[e]vidence of whether a particular function is essential." 29 C.F.R. § 1630.2(n)(3)(i); see also Toland v. AT&T, 489 Fed. Appx. 318, 319 (11th Cir. 2012)("We give substantial weight to the employer's judgment as to what functions of a position are essential."); Mason v. UPS Co., 674 Fed. Appx. 943 (11th Cir. 2017)(giving "substantial weight" to "employer's judgment about which functions are essential"). The Court may also consider:

(ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii)   Amount of time spent on the job performing the function;
(iv)    Consequences of not requiring the incumbent to perform the function;
(v)     Terms of a collective bargaining agreement;
(vi)    Work experience of past incumbents in the job; and/or
(vii)   Current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3)(ii)–(vii).

In addition to giving substantial weight to an employer's job description and judgment, courts in the Eleventh Circuit have routinely held that "regular and predictable attendance" is an essential function of nearly every job. See e.g., Garrison v. City of Tallahassee, 664 Fed. Appx. 823, 826 (11th Cir. 2016)(affirming summary judgment in favor of employer because district court correctly concluded "full-time physical attendance" was an essential function); Haysman v. Food Lion, 893 F.Supp. 1092, 1103 (S.D. Ga. 1995)(granting summary judgment to employer because plaintiff would "come and go as he pleased" and attendance on a "reliable and consistent basis" was an essential function).  As one court put it, "the most essential function of any job, and a prerequisite to the performance of other essential functions, is attendance at work, for an employee who is absent can perform no function, essential or non-essential." Paleologos v. Rehab Consultants, 990 F.Supp. 1460, 1467 (N.D. Ga. 1998).[4]

---

[4]    See also Coker v. Enhanced Senior Living, Inc., 897 F.Supp.2d 1366, 1378 (N.D. Ga. 2012)("It is well settled that for many (if not most) jobs, regular attendance is an 'essential function.'"); Lamar v. Wells Fargo Bank & Co., 2 F.Supp.3d 1202, 1212 (N.D. Ala. 2014)

The PEO job description, along with the testimony of Jackson and his supervisors, establishes that the essential functions of a PEO include, but are not limited to: (1) reliable and consistent attendance; (2) issuing parking citations; (3) patrolling assigned zone by foot and/or vehicle; (4) communicating and interacting with the public; (5) informing violators of parking laws and regulations; (6) providing information to public regarding directions and parking facilities; and (7) asking drivers to move their vehicles to designated areas.[5]

Regular and consistent attendance is uniquely essential for a PEO. The PEO work schedule is based on the time most businesses are open.[6] It is essential that during these hours each parking zone be monitored by a PEO;  if a zone is not monitored by a PEO during these hours, violations will go uncited.[7] This causes COB to lose revenue and significantly increases the likelihood that parking and traffic issues will arise in that zone.[8] See 29 C.F.R. § 1630.2(n)(3)(iv).

Inherent in the PEO position is encountering members of the public who are angry or confrontational on a daily basis and exposure to traffic and loud noises.[9] Jackson readily admits that PEOs are exposed to these conditions on a daily basis,

---

(regular and consistent attendance was an essential function of the plaintiff's position); Rodgers v. Time Customer Serv., 2011 U.S. Dist. LEXIS 58155, at *18-19 (M.D. Fla. 2011)(attendance was an essential function that the employer was not required to eliminate).

[5]  See Facts, ¶¶ 18-21.

[6]  See Facts, ¶ 19.

[7]  Id.

[8]  Id.

[9]  See Facts, ¶¶ 20-21.

often times many times a day.[10] See 29 C.F.R. § 1630.2(n)(3)(iii).

There is no way to perform the position of PEO without being exposed to these conditions.  See 29 C.F.R. § 1630.2(n)(3)(iv).  Not requiring a PEO to be able to communicate with the public or to be able to work around traffic and loud noises would entail eliminating every essential function of the PEO position.  A PEO who is not able to communicate with the public, including angry or confrontational individuals, would not be able to inform violators of citations and regulations, provide information to the public, or ask drivers to move their vehicles to designated parking areas.[11]  A PEO who cannot be exposed to traffic and loud noises on a daily basis cannot perform any essential function of the PEO position.[12]

Jackson's ADA claim fails as a matter of law because he cannot perform these essential functions of a PEO with or without a reasonable accommodation, and, therefore, he is not a qualified individual with a disability.

### 2.    Jackson Could not Perform the Essential Functions of a PEO Without a Reasonable Accommodation.

Jackson's medical, disability, and attendance records, as well as his own testimony establish that he could not perform the following essential functions of a PEO without an accommodation: (1) reliable and consistent attendance; (2)

---

[10] Id.
[11] See Facts, ¶¶ 18, 20-21, 29.
[12] Id.

communicating and interacting with the public, including unhappy and confrontational individuals; and (3) working around loud noises and traffic.[13]

Following his discharge from the military, Jackson received a seventy-percent disability rating.[14] According to the July 14, 2014 letter from Dr. Turner, Jackson's PTSD symptoms are worsened by "people getting in his face," "people yelling," and "the sounds of horns blowing."[15] The letter also indicated the medication Jackson took for his PTSD caused him to oversleep.[16] Jackson acknowledges he is "easily startled and agitated with loud noise" and "becom[es] extremely agitated if people confront [him] when [he] is ticketing their car."[17] Jackson himself testified that aspects of the PEO position worsened his PTSD and that patrolling his zone caused anxiety and flashbacks **every day** he worked as a PEO.[18]

Jackson also receives SSDI benefits,[19] which requires a showing that he is unable to perform any occupation. Flowers v. City of Tuscaloosa, 2013 U.S. Dist. LEXIS 19730, at *45 (N.D. Ala. 2013)("In order to be eligible for SSDI benefits, a claimant must generally allege and prove that [he] is 'disabled,' meaning [he] has [an] impairment 'of such severity [he] is not only unable to do [his] previous work

---

[13] See Facts, ¶¶ 22-24, 27-31.
[14] See Facts, ¶ 22.
[15] See Facts, ¶ 23.
[16] Id.
[17] See Facts, ¶ 24.
[18] Id.
[19] See Facts, ¶ 31.

but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.")(quoting Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 803 (1999)).[20] Thus, Jackson has taken the position (and proven) before the Social Security Administration that he is unable to perform the position of PEO or any other job as a result of his alleged disability.[21]

Jackson's attendance records also establish that he cannot perform the essential function of reliable and consistent attendance. Jackson does not dispute that between May 27, 2014 and August 6, 2014, he was absent 8 times, late to work 11 times, and left work early 7 times.[22] In total, Jackson failed to work a full shift on 26 out of the 50 days he was scheduled to work in 2014, and on many of these occasions his supervisor received little to no advance notice of his absence.[23]

Based on the foregoing, Jackson is unable to perform multiple essential

---

[20]   See also Anderson v. Georgia-Pacific Wood Prods., LLC, 942 F.Supp.2d 1195, 1203-04 (M.D. Ala. 2013); Corder v. City of Bessemer, 2016 U.S. Dist. LEXIS 98860, at *29-31 (N.D. Ala. 2016).

[21]   In fact, Jackson is estopped from arguing he is qualified to perform the duties of a PEO. See Lowber v. W.L. Halsey Grocery Co., 2013 U.S. Dist. LEXIS 109440, at *19-21 (N.D. Ala. 2013)(holding plaintiff estopped from asserting he could perform his job after representing to the Social Security Administration he was disabled); Boyle v. City of Pell City, 2016 U.S. Dist. LEXIS 118711, at *25-28 (N.D. Ala. 2016)(concluding plaintiff was estopped from denying statements in social security application that he could not work); Hayes v. Voestalpine Nortrak, Inc., 185 F.Supp.3d 1314, 1319-20 (N.D. Ala. 2016)(granting summary judgment to employer where plaintiff represented in social security application that he was totally disabled); Chancey v. Fairfield Southern Co., 949 F.Supp.2d 1177, 1189-91 (N.D. Ala. 2013)(holding plaintiff could not show he was a qualified individual after representing to the Social Security Administration and Veterans Affairs he was disabled).

[22]   See Facts, ¶¶ 19(d)-(f).

[23]   Id.

functions of the PEO position without a reasonable accommodation.

### 3. Jackson Has Not Identified Any Reasonable Accommodation That Would Enable Him to Perform the Essential Functions a PEO.

Jackson carries the burden of identifying a reasonable accommodation that would enable him to perform the essential functions of a PEO. Mason, 674 Fed. Appx. at 951.[24] "The use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." Shepard, 470 Fed. Appx. at 730 (quoting Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1285 (11th Cir. 1997)); Mason, 674 Fed. Appx. at 951. Neither is an employer "required to 'transform the position into another one by eliminating functions that are essential to the nature of the job as it exists.'" Mason, 674 Fed. Appx. at 951 (quoting Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001)).[25]

When a plaintiff seeks an accommodation to help him perform the essential function of consistent and predictable attendance, courts in the Eleventh Circuit have routinely held that allowing additional breaks, allowing an employee to come and go as he pleases, allowing an employee to arrive at work at any time, or requiring another employee to cover for the plaintiff are not reasonable

---

[24] See also Anderson v, 942 F.Supp.2d at 1206; Haines v. Cherokee County, 2010 U.S. Dist. LEXIS 71524, at *14 (N.D. Ga. 2010).

[25] See also Anderson, 942 F.Supp. 2d at 1206; Jones v. Allstate Ins. Co., 2016 U.S. Dist. LEXIS 106865, at *4-5 (N.D. Ala. 2016); Lamar, 2 F.Supp.3d at 1212.

accommodations.  See Jackson v. Veterans Administration, 22 F.3d 277, 279 (11th Cir. 1994); Jones 2016 U.S. Dist. LEXIS 106865, at *4-5; Lamar 2 F.Supp.3d at 1212-1213.  In Jackson, the Eleventh Circuit held an employee was not a qualified individual when he "was absent numerous times within the first few months of his probationary employment on a sporadic, unpredictable basis," and as a result, he "could not fulfill the essential function of . . . being present on the job." 22 F.3d at 279. In reaching its conclusion, the Eleventh Circuit noted that the plaintiff's requested accommodation of a flexible work schedule:

> [Did] not address the heart of the problem: the unpredictable nature of [plaintiff's] absences.  There is no way to accommodate this aspect of his absences. Requiring the VA to accommodate such absences would place upon the agency the burden of making last-minute provisions for [his] work to be done by someone else.

Id. at 279.

In Mecca v. Fla. Health Servs. Ctr., Inc., the district court applied this same rationale in concluding the plaintiff was not a qualified individual.  2014 U.S. Dist. LEXIS 13065, at *11 (M.D. Fla. 2014).  The district court explained:

> [A]n employer is not required to reallocate job duties to change the functions of a job. . . . A request to arrive at work at any time, without reprimand, is not a reasonable accommodation because it would change the essential functions of a job that requires punctual attendance.

Id. at *11.

This Court reached similar conclusions in Jones and Lamar. In Jones, this

Court held an employee was not a qualified individual where attendance and answering phone calls were essential functions of her job and her requested accommodation was more breaks.  2016 U.S. Dist. LEXIS 106865, at \*4-5.  The Court noted that the employer had already provided the plaintiff with five to ten minute breaks, and the plaintiff could not recall being denied a break. Id. at \*5. Allowing more breaks would require the employer to eliminate essential functions of the plaintiff's job: attendance and answering phone calls. Id.  Thus, the plaintiff was not a qualified individual under the ADA because her requested accommodation would eliminate an essential function of her position.  Id. at \*4-5.

Similarly, in Lamar, this Court granted summary judgment in favor of the employer where regular and consistent attendance was an essential function of the plaintiff's position, and the requested accommodations included allowing plaintiff to leave if she felt unwell and arranging for a coworker to perform her job duties. 2 F.Supp.3d at 1212-13. This Court explained, "[a]rranging for a coworker to perform [plaintiff's] duties in her absence . . . would merely compensate for [plaintiff's] inability to do so, rather than enabling [plaintiff] to perform her job." Id. at 1213.  Also detrimental to the plaintiff's argument that she was a qualified individual was the fact that her requested accommodation addressed her attendance issues but "[had] no bearing on her ability to 'be alert, able to concentrate, and recall, utilize, and adhere to [employer] policies." Id.  Thus, the plaintiff was not a

qualified individual because her requested accommodation was unreasonable and would not enable her to perform the essential functions of her job. Id.

Like the plaintiffs in Jackson, Mecca, Jones and Lamar, Jackson's requested accommodations would (1) require COB to eliminate essential functions of the PEO position and (2) not enable Jackson to perform the essential functions of a PEO.  Jackson's requested accommodations appear to include: (1) allowing him to arrive at work late, at unspecified times and on unspecified days; (2) allowing him to leave work early, at unspecified times and on unspecified days; (3) allowing him additional and longer breaks; and (4) allowing time off for his doctor's appointments.[26]  Notably, Jackson admits (1) he was allowed multiple breaks, (2) no one limited his number of restroom breaks, and (3) he was allowed time off to attend his doctor's appointments.[27]

Putting aside the requested accommodations regarding breaks and time off to attend medical appointments that Jackson does not dispute he received, none of the requested accommodations are reasonable and none would enable Jackson to perform the essential function of consistent and predicable attendance.[28]  Instead,

---

[26] See  Facts, ¶¶ 25, 27.
[27] See Facts, ¶ 28.
[28] To the extent Jackson alleges COB violated the ADA by failing to reassign him or transfer him to another position, that claim fails because Jackson did not request reassignment.  See Frazier-White v. Gee, 818 F.3d 1249, 1257 (11th Cir. 2016)(affirming summary judgment for employer where plaintiff "did not ever request reassignment to a specific position or provide any information that would have enabled [d]efendant to determine whether she could perform the essential duties of a vacant position.");  Pearson v. Augusta, 2017 U.S. Dist.

each of the requested accommodations would require COB to eliminate an essential function of Jackson's position and would "merely compensate for [his] inability" to perform the essential function of consistent and predicable attendance. See Lamar 2 F.Supp.3d at 1213. Moreover, if Jackson were allowed to come and go as he pleased, COB would be required to use other PEOs to cover his zone.[29] Alternatively, Jackson's zone would remain uncovered.[30] Because Jackson's requested accommodations would not enable him to perform the essential function of consistent and predictable attendance, he is not a qualified individual, and his ADA claim fails as a matter of law.

Jackson's ADA claim also fails because his requested accommodations do not address the fact that his PTSD symptoms (anxiety, stress, agitation, and anger) were triggered and worsened by conditions he experienced every day he worked as a PEO, including yelling, confrontations, loud noises, and flashing lights.[31] According to Jackson, his symptoms continued, and in some cased worsened, even after his employment with COB ended.[32] For these PTSD symptoms, Jackson proposes absolutely no accommodation, and his own testimony establishes that there is no accommodation that would reduce or eliminate these symptoms and

---

LEXIS 34006, at *32 (S.D. Ga. 2017)("Plaintiff's argument that Augusta should have transferred her to a new position fails because she did not request reassignment.").

[29] See Facts, ¶ 19(a)-(c).

[30] Id.

[31] See Facts, ¶¶ 20-21, 23-24, 29-30.

[32] See Facts, ¶ 30.

enable him to perform the essential functions of a PEO.[33]

It is Jackson's burden to establish he sought a <u>reasonable</u> accommodation that would enable him to perform the essential functions of a PEO.  Because he has failed to do so, he is not a qualified individual under the ADA, and his ADA claim fails as a matter of law.

### C.   <u>The Continuance of Jackson's Probationary Period, Which Was an Active Training and Evaluation Period, Did Not Violate Jackson's Reemployment Rights Under USERRA.</u>

Jackson alleges COB violated USERRA by requiring him to complete his training and probationary period upon his reemployment with COB in May 2014. Generally, reemployed individuals are "entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service . . . plus the additional seniority rights and benefits that such person would have attained if the person had remained continuously employed."  38 U.S.C.A. § 4316(a); <u>see also</u> 20 C.F.R. § 1002.210.

As an initial matter, Jackson is judicially and equitably estopped from asserting a § 4316(a) USERRA claim because he represented to the Social Security Administration and Veterans Affairs that he is disabled. <u>See</u> <u>Brown v. Con-Way Freight, Inc.</u>, 2016 U.S. Dist. LEXIS 28420 (N.D. Ill. 2016) (holding plaintiff judicially and equitably estopped from asserting § 4316(a) claim after representing

---

[33]   <u>See</u> Facts, ¶ 29.

he was disabled in prior litigation and to the VA).   Even if Jackson were not estopped from asserting a § 4316(a) claim, his claim would still fail because he cannot show that extending his bona fide training period violated USERRA.

The regulations make clear that "USERRA was certainly never intended to allow a person to be exempt from necessary and important training for a job." Gipson v. Cochran, 90 F. Supp. 3d 1285, 1299 (S.D. Ala. 2015).   In fact, "extending a training period, in part, to make up for absences due to military leave, does not violate USERRA, and . . . is contemplated by USERRA." Id.; see also Paxton v. City of Montebello, 712 F. Supp. 2d 1007, 1013 (C.D. Cal. 2010)("[A] probationary employee can be required to complete his probationary period following his return from military leave.").

With respect to advancement from "probationary" status during military leave, reemployment status depends on the nature of the probationary period. Gipson, 90 F.Supp. 3d at 1298-99; see also Paxton, 712 F. Supp. 2d at 1013.   The Department of Labor "'has long held that if a probationary period is a bona fide period of observation and evaluation, the returning service member must complete the remaining period of probation upon reemployment.'" Paxton, 712 F.Supp. 2d at 1013 (quoting 70 Fed. Reg. 75246, 75272 (Dec. 19, 2005)); Gipson, 90 F. Supp. 3d at 1298-99 (finding that extending deputy sheriff's training test period following her military leave was not unlawful discrimination under USERRA).

The burden is on the employee to show a "reasonable certainty [or] high probability that the employee would have received the seniority or seniority-based right or benefit if he . . . had been continuously employed." 20 C.F.R. § 1002.213 (emphasis added).   Applying this principle in Gipson, the court concluded the extension of the plaintiff's test period did not violate USERRA because it was too speculative to assume she would have timely attained permanent status if she had not been absent for military leave.  90 F.Supp.3d at 1298-99.

Jackson worked as a PEO for just 15 days before his military leave.[34] During this short time Jackson began, but was unable to complete, the necessary training required for all PEOs.[35]   Jackson was unable to complete the initial training period wherein PEOs train daily directly with a supervisor, which includes studying and learning: ordinances, how to issue citations, parking zones, how to identify violations, and how to operate equipment.[36]   Because Jackson did not complete his initial training period before deployment, he was unable to begin his subsequent training period which includes regular monitoring by a supervisor.[37] Even after the second training period, PEOs continue to be exposed to new situations and violations for many months.[38]   During the remainder of the

---

[34]  See Facts, ¶ 4.
[35]  See Facts, ¶¶ 15-16.
[36]  See Facts, ¶¶ 8-11, 15-16.
[37]  See Facts, ¶¶ 15-16.
[38]  See Facts, ¶ 14.

probationary period, a PEO's performance is routinely monitored and evaluated.[39]

Following his May 27, 2014 return from leave, Jackson was scheduled to work and train for 50 days, 26 of which were not full shifts due to Jackson's attendance issues.[40]   Notably, when Jackson began his training in 2014, he continued to make mistakes for several weeks.[41] For this reason, the PEO supervisor continued to monitor and evaluate Jackson's performance in June and July 2014.[42]

Based on the foregoing, the PEO probationary period is used to both train and evaluate PEOs for the first year of their employment, and Jackson cannot show a reasonable certainty or high probability that he would have satisfactorily completed his probationary period had he continuously remained employed.  Thus, to the extent Jackson's USERRA claim is based on COB requiring Jackson to complete his probationary period, that claim fails as a matter of law.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant City of Birmingham respectfully requests that the Court grant its Motion for Partial Summary Judgment, and for such other relief as appropriate.

---

[39] <u>Id.</u>
[40] <u>See</u> Facts, ¶ 19(d)-(e).
[41] <u>See</u> Facts, ¶ 17.
[42] <u>Id.</u>

Respectfully Submitted,

*s/ Amy Jordan Wilkes*
Michael K.K. Choy (CHO001)
Michael L. Lucas (LUC004)
Amy Jordan Wilkes (JOR041)
Meghan N. Cox (NOW003)

Attorneys for the City of Birmingham

**OF COUNSEL:**
BURR & FORMAN LLP
420 20th Street North
Suite 3400
Birmingham, AL
Telephone: (205) 251-3000
Facsimile: (205) 458-5400
mchoy@burr.com
mlucas@burr.com
awilkes@burr.com
mcox@burr.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Heather Newsom Leonard
HEATHER LEONARD, P.C.
P.O. Box 43768
Birmingham, Alabama 35243

*s/ Amy Jordan Wilkes*
OF COUNSEL